UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| QXMÉDICAL, LLC, | Case No. 17-CV-1969 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| VASCULAR SOLUTIONS, LLC; ARROW INTERNATIONAL LLC; TELEFLEX LIFE SCIENCES LIMITED; and TELEFLEX LLC, | |
| Defendants. | |

---

Courtland C. Merrill, Philip J. Kaplan, and William R. Paterson, ANTHONY OSTLUND BAER & LOUWAGIE P.A., for plaintiff.

J. Thomas Vitt, Sanjiv P. Laud, and Emily J. Tait, JONES DAY; Kenneth E. Levitt, DORSEY & WHITNEY, for defendants.

Plaintiff QXMédical, LLC ("QXMédical") filed this action in June 2017, seeking a declaration that its Boosting Catheter does not infringe any of defendants' (collectively "Teleflex's") patents and that Teleflex's patents are invalid.  Teleflex counterclaimed for infringement, ultimately asserting claims in six patents.

This matter is before the Court on QXMédical's motion to extend the stay of this action and dissolve the injunction that the Court entered on December 26, 2019.  ECF No. 194.  For the reasons that follow, the Court grants the motion insofar as it seeks to extend the stay but denies the motion insofar as it seeks to dissolve the injunction.

After issuing an order construing certain terms of the patents, ECF No. 102, and then an order on the parties' motions for summary judgment, ECF No. 156, the Court scheduled trial to begin on February 24, 2020, ECF No. 157.  Meanwhile, in July 2019, Teleflex and related parties brought an infringement action against Medtronic, Inc. and related parties (collectively "Medtronic"), asserting many of the same patent claims at issue in this case.  *See Vascular Sols. LLC v. Medtronic, Inc.*, No. 19-CV-1760 (PJS/TNL).  Between November 12 and 14, 2019, Medtronic filed 13 petitions for *inter partes* review ("IPR") of a number of Teleflex's patent claims, including six of the eight claims that remain at issue in this case.

In December 2019, QXMédical moved to stay the trial in this action in light of the pendency of Medtronic's petitions.  ECF No. 173.  There is no dispute that, by the time QXMédical moved to stay, QXMédical no longer had the right to petition for IPR on its own behalf.  *See* 35 U.S.C. § 315(b).  As Teleflex put it in opposing QXMédical's motion, QXMédical "seeks to free-ride and await the results of Medtronic's IPR petitions which present new prior art references . . . and are subject to a lower burden of proof on invalidity."  ECF No. 186 at 8.  Moreover, as trial was scheduled to begin in February and a decision on whether to institute review on Medtronic's petitions was not due for six months, Teleflex was poised to obtain a final judgment before the conclusion of Medtronic's IPR proceedings.

Likely in recognition of these facts, QXMédical offered a number of concessions in order to persuade the Court to issue a stay. Among other things, QXMédical made the following representation under penalty of perjury:

> If the Court grants a stay of this case, QXMédical agrees to suspend all sales and all offers for sales of its accused Boosting Catheter product in the United States, and QXMédical will only continue to manufacture the Boosting Catheter within the United States for sales outside the United States, until the stay of this case is lifted by the Court.

Panarello Decl. ¶ 4 [ECF No. 176]. QXMédical also offered to waive certain of its invalidity defenses. *Id.* ¶ 3; ECF No. 194 at 2.

Based on these concessions, the Court found that a stay was warranted. ECF No. 194. The Court postponed the trial and stayed the case pending the determination of the Patent Trial and Appeal Board ("PTAB") concerning whether to institute review on any of Medtronic's petitions. *Id.* at 3. The Court also enjoined QXMédical from selling the Boosting Catheter in the United States until further order of the Court. *Id.*

Recently, the PTAB instituted review on six of Medtronic's petitions. ECF No. 213. These petitions cover six of the eight claims that remain at issue in this case. *Id.* In light of this decision, QXMédical moves to extend the stay pending the conclusion of the IPR process. ECF No. 214. And despite its earlier sworn agreement to suspend all domestic sales while the stay remains in effect, QXMédical also moves to dissolve the injunction. *Id.*

The Court agrees with QXMédical that the stay should be extended. In addition to the efficiencies to be gained by awaiting the outcome of the IPR process, the impact of the COVID-19 pandemic on the Court's operations means that, as a practical matter, it will likely be at least a year before the Court can resume lengthy civil jury trials. The Court therefore grants QXMédical's motion to the extent that it seeks to extend the stay through the conclusion of the IPR process.

Given that an extension of the stay is a foregone conclusion, the only issue is whether, in light of the extended stay, the Court should leave the injunction in place. QXMédical argues that it would be inequitable to continue the injunction in light of (1) the PTAB's decision to institute review and (2) the Court's denial of Teleflex's motion for a preliminary injunction in the Medtronic case. *See Vascular Sols. LLC*, No. 19-CV-1760 (PJS/TNL), ECF No. 247; *see also Movie Sys., Inc. v. MAD Mpls. Audio Distribs.*, 717 F.2d 427, 430 (8th Cir. 1983) ("In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason.").

The Court sees no "good reason" to dissolve the injunction in this case. The PTAB's decision to institute review was expressly contemplated by QXMédical's initial motion for a stay; indeed, the whole premise of QXMédical's argument was that trial

should be postponed until after the PTAB addressed the validity of the claims that Medtronic is challenging. As for the Court's denial of Teleflex's motion for a preliminary injunction against Medtronic, that motion was pending and the briefing was nearly complete at the time QXMédical sought a stay in this case. QXMédical nevertheless chose to offer to suspend United States sales of the Boosting Catheter during the entire duration of the stay and did not seek to condition its offer on the outcome of the pending preliminary-injunction motion. In refusing to modify the injunction, therefore, the Court is doing nothing more than holding QXMédical to the terms of the deal that it offered in order to induce the Court to order a stay.

In contrast, dissolving the injunction would be highly unfair to Teleflex. Teleflex opposed QXMédical's initial motion for a stay, and the Court would not have granted that stay without the concessions that QXMédical made. Because of the COVID-19 pandemic, the Court has no practical ability to relieve Teleflex from the consequences of the stay. As a result, Teleflex, through no fault of its own, is facing a lengthy delay, while QXMédical is getting precisely what it offered the concessions to get. The equities in this situation clearly weigh in Teleflex's favor.

Finally, QXMédical argues that its concessions are an insufficient basis on which to continue the injunction and that Teleflex must instead establish that it is entitled to a preliminary injunction under the traditional four-factor test. *See Dataphase Sys., Inc. v.*

*C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  Having previously induced the Court to issue a stay by offering certain concessions, however, QXMédical cannot now be heard to argue that those same concessions are an insufficient basis for a stay.  *See Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); *Scudder v. Dolgencorp, LLC*, 900 F.3d 1000, 1006 (8th Cir. 2018) (judicial estoppel applies when a party's later position is clearly inconsistent with its earlier position, the party persuaded the court to accept its earlier position, and the party would derive an unfair advantage or impose an unfair detriment if not estopped).

Setting that aside, the cases QXMédical cites for the proposition that the Court may not rely on QXMédical's concessions are distinguishable, as they involve contracts between private parties (without any judicial involvement) rather than representations made to a court for the very purpose of inducing judicial action.  *See Cambria Co. v. Schumann*, No. 19-CV-3145 (NEB/TNL), 2020 WL 373599, at *7 (D. Minn. Jan. 23, 2020); *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1055 (D. Minn. 2019).  The Court therefore declines to dissolve the injunction.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to continue stay and dissolve injunction [ECF No. 214] is GRANTED IN PART and DENIED IN PART.

2. This case is STAYED until further order of the Court.

3. The parties are directed to notify the Court as soon as reasonably possible of the conclusion of the *inter partes* review process instituted on the petitions filed by Medtronic, Inc.

4. Plaintiff is enjoined from selling its infringing Boosting Catheter product in the United States until further order of the Court.

Dated:  July 7, 2020	 s/Patrick J. Schiltz
	Patrick J. Schiltz
	United States District Judge